IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEBORAH ANN NARDELLA          :
                              :       CIVIL ACTION
         v.                   :
                              :       NO. 09-5629
PHILADELPHIA GAS WORKS, ET AL. :

SURRICK, J.                                           APRIL __3__, 2012

## MEMORANDUM

Presently before the Court is Defendant Philadelphia Gas Works' Partial Motion to Dismiss Amended Complaint.[1] (Def.'s Mot., ECF No. 14.) For the following reasons, the Motion is granted in part and denied in part.

**I.     BACKGROUND**

The facts, as presented here, are taken from pro se Plaintiff Deborah Ann Nardella's Amended Complaint, which is twenty-five pages long and contains 219 numbered paragraphs.[2] (Am. Compl., ECF No. 12.) Plaintiff was hired by Defendant Philadelphia Gas Works ("PGW")

---

[1] Counts I and VII of the Amended Complaint are not at issue here. Count I alleges employment discrimination based on gender, and Count VII alleges that Defendants retaliated against Plaintiff. Defendant seeks dismissal of Count II alleging reverse race discrimination, Count III alleging hostile work environment based upon gender, Count IV alleging hostile work environment based upon race, Count V alleging harassment, ridicule and psychological harassment, and Count VI alleging violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206 *et seq*.

[2] "In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them." *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009).
    Plaintiff is proceeding pro se in this matter. Pro se pleadings are subject to a liberal review. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Supreme Court has held that a pro se complaint, "however inartfully pleaded," is to be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); s*ee also Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011).

on April 7, 2003 to work as a secretary for the Director of Labor.  (*Id*. at 2.)  Plaintiff worked for the Director of Labor, Thomas Murphy, a white male, and following his retirement, she was employed as a secretary for his successor, Defendant Steven Jordon, a black male.[3]  (*Id*.; Compl. 2, ECF No. 1.)  On June 26, 2008, Plaintiff was advised that she had been terminated in a letter from Defendant Gary Gioioso.  The reason given for the termination was "poor work performance and significant errors."  (Am. Compl. ¶¶ 200, 203; Compl. 2.)  Plaintiff alleges that following her termination, her health insurance coverage was terminated while she was undergoing treatment for a fractured back.  (Am. Compl. ¶¶ 207-08.)  Plaintiff claims that she did not receive severance pay.  (*Id*. at ¶ 209.)

     Plaintiff alleges that her performance at work was consistently underappreciated, and her contributions to PGW were underutilized, because she was a white female.  Plaintiff offers several examples.  She claims that her supervisors edited her work, "changing things which did not need changing to make her feel incompetent because she was a female."  (*Id*. at ¶¶ 98, 160.)  Plaintiff accuses PGW supervisors[4] of "repeatedly referenc[ing] a typo from two years prior."  (*Id*. at ¶ 106.)

     Plaintiff claims that employee Defendants changed the contents and the order of binders that she had prepared.  (*Id*. at ¶¶ 123, 151-54.)  She alleges that in May or June of 2008, her

---

     [3] Plaintiff's claims relate to the second Director of Labor for whom she worked, and appear to be limited to the final two and a half years of her tenure at PGW.  (Am. Compl. ¶ 167.)

     [4] Plaintiff often refers to actions by "PGW" or "PGW Defendant" that were clearly the behavior of individual employees.  Plaintiff does not provide names for the employees who allegedly engaged in these discrete actions.

supervisor asked her to "reorganize all of the file cabinets and place the documents in binders by headings." (*Id*. at ¶ 151.)  Plaintiff did so, leaving work for the day at 4:00 p.m. (*Id*. at ¶ 152.)  When Plaintiff reported for work the next morning, the Director of Labor noted that a "document was out of order." (*Id*. at ¶ 153.)  This happened repeatedly, and Plaintiff stated that "she felt someone changed the order of the documents after she left for the day." (*Id*. at ¶ 154.)  The director asked, sarcastically, if "someone is coming in here in the middle of the night (ghost?) and changing the order of the documents." (*Id*. at ¶ 155.)  Plaintiff subsequently called Security to investigate and filed a written report. (*Id*. at ¶ 156.)

Plaintiff alleges that she was "expected to take on double the work due to her race," leading her to feel "like she was involved in slave labor." (*Id*. at ¶ 131.)  As an example of the overburdening, Plaintiff notes that the Director of Labor would "on occasion . . . ask plaintiff to review, edit and send other secretaries' work out on her computer," despite the fact that Plaintiff did not feel comfortable performing this function. (*Id*. at ¶ 212-13.)  Plaintiff claims that while she was hired to work as a secretary for a single director, she was frequently assigned to work for other PGW supervisors without receiving a pay raise. (*Id*. at ¶ 176.)  Plaintiff also claims that she "was continually and purposely interrupted every time that she prepared Minutes or any other important task," and was asked "to answer billing calls for customers at times." (*Id*. at ¶¶ 162-63.)  Plaintiff refused to do this because she was not trained and the call-answering was a union position. (*Id*. at ¶ 164.)  As a result of her refusal, she was reprimanded. (*Id*.)

During the course of her employment, Plaintiff was evaluated on several occasions.  During the first years of her tenure at PGW, Plaintiff's evaluations indicated that she was performing her job satisfactorily. (*Id*. at 3.)  In 2006 and 2007, however, company evaluations of

3

Plaintiff's performance were less complimentary. (*Id*.) Plaintiff was labeled as "need[ing] improvement" and "consistently fall[ing] short of company standards." (*Id*.) Plaintiff claims that her negative evaluations were incorrect, and that her manager at her previous job agreed. (*Id*. at ¶ 173.) Plaintiff believes that a previous employer might have followed her to PGW in order to harass her. (*Id*. at ¶ 172.)

In November 2006, PGW placed Plaintiff on a Personal Improvement Plan ("PIP"). (*Id*. at ¶ 15.) Plaintiff was enrolled in a second PIP on November 9, 2007. (*Id*. at ¶ 55.) Although it is unclear what these PIPs entailed, they were presumably a response to negative evaluations of Plaintiff's work performance. (*Id*. at ¶¶ 15-16, 55.) Plaintiff claims that she was coerced into participating in the PIPs, and told that if "she did not sign the PIP she could be fired." (*Id*. at ¶ 19.) Plaintiff claims that she was placed on these PIPs by her superiors to prevent her from interviewing for higher-paying positions or from "progress[ing] as the males progressed in the company." (*Id*. at ¶¶ 56, 100, 194.) Plaintiff also claims that these PIPs had the effect of preventing her from receiving "the benefits of being a full time employee of the company." (*Id*. at ¶ 92.) Specifically, Plaintiff claims that she was denied the opportunity to be reimbursed for tuition expenses because of the PIP. (*Id*. at ¶¶ 90-91, 102.) Plaintiff claims that PGW ridiculed her "because [PGW] preferred to have an African-American in the department." (*Id*. at ¶ 91.) She notes that her superiors seemed to "take pleasure" in the close supervision of Plaintiff that the PIPs required. (*Id*. at ¶ 166.)

Plaintiff claims that PGW pursued hiring and training policies that discriminated against Caucasians in favor of African-Americans. For example, Plaintiff claims that she "was not invited to attend the training on a new attendance system as were other members of PGW of a different

4

race." (*Id*. at ¶ 77.) She claims that the "majority of the employees that PGW hired were of the darker race." (*Id*. at ¶ 79.) Furthermore, she notes that "PGW/Labor Director was more comfortable working with African-Americans." (*Id*. at ¶ 82.) She claims that she was denied the opportunity to learn a new computer system because she was a white female. (*Id*. at ¶¶ 104-06, 117.)

      Plaintiff requested to be transferred from the Labor Department, but her request was denied. (*Id*. at ¶ 25.) As the work environment at PGW became more difficult for Plaintiff, she sought recourse through the company's internal human resources procedures. Plaintiff filed a formal complaint with the Human Resources department in mid-November 2007, "expressing concern over the continuous discrimination . . . harassment high gas bills, etc." (*Id*. at ¶ 57.) Plaintiff repeatedly cites higher gas bills as evidence of discrimination and the hostile work environment at PGW, implying that PGW management deliberately inflated her home utility bills as a form of retaliation. (*See, e.g.*, *Id*. at ¶¶ 165, 199.) Plaintiff claims that PGW's billing department was unresponsive to her complaints about high bills. (*Id*. at ¶ 165.) PGW's Organizational Development and Legal departments responded to Plaintiff's complaints about discrimination and high gas bills advising that they "did not feel plaintiff had any basis for a Complaint." (*Id*. ¶ 57, 64.) Plaintiff alleges that in June 2008, her supervisor "called [her] in to his office and insinuated that she was trying to take over his job as the Director." (*Id*. at ¶ 66.) Plaintiff denied this allegation, which the Director of Labor then repeated. (*Id*. at ¶¶ 67-68.) It appears that Plaintiff was accused of going over the Director's head in filing a grievance. (*Id*. at ¶¶ 83-84.) Plaintiff was terminated soon thereafter. (*Id*. at ¶ 83.) According to Plaintiff, company officials were consistently unsympathetic to her complaints. (*Id*. at ¶¶ 53-55.)

Plaintiff claims that she was "discriminated against, forced to work in a hostile environment, harassed [and] ridiculed," and that she was paid "wages which were not comparable to other employees performing similar work." (*Id*. at 3.)  According to Plaintiff, she was denied raises and opportunities to advance because of her gender.  (*Id*. at ¶ 101.)  Plaintiff alleges that her mistreatment is the product of a conspiracy to discriminate against her, and that she was further retaliated against for expressing concern about the existence of such a conspiracy.  (*Id*. at 3.)

Plaintiff filed a grievance with the federal Equal Employment Opportunity Commission ("EEOC"), and received a Notice of Right to Sue in September 2009.[5]  (Am. Compl. Ex. 1.)  On November 25, 2009, Plaintiff filed a Complaint in this District.  The case was assigned to Honorable Mitchell S. Goldberg.  Judge Goldberg addressed a Motion To Dismiss Plaintiff's Complaint, dismissing several counts and granting Plaintiff leave to file an Amended Complaint. (Order on Mot. to Dismiss, ECF No. 11.)  Judge Goldberg concluded that Counts II, III, IV, V and VI of the Complaint failed to state a claim.  (Mem. on Mot. to Dismiss, ECF No. 10.)  Plaintiff filed the Amended Complaint on July 26, 2010.  Defendant PGW filed this Partial Motion to Dismiss on August 25, 2010, seeking to dismiss Counts II, III, IV, V and VI of the Amended Complaint.  Plaintiff has not filed a response to Defendant's Motion.  Ultimately, Judge Goldberg recused himself and the case was reassigned to this Court.  (Order Reassigning Case, ECF No. 30.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a complaint must contain a "short and plain

---

[5] Plaintiff also claims that she filed a complaint with the Pennsylvania Human Relations Commission ("PHRC").  (Am. Compl. ¶ 216.)  The PHRC did not find evidence of discrimination and advised Plaintiff to consult an attorney or file a complaint in the Court of Common Pleas.  (*Id*. at ¶¶ 220-23.)  Plaintiff does not seek relief under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951, *et seq*.

statement of the claim showing that the pleader is entitled to relief." Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). Nevertheless, the Court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000), or the plaintiff's "bald assertions" or "legal conclusions," *Morse v. Lower Merion Sch. Dist.*, 132 F.3d. 902, 906 (3d Cir. 1997).

### III. DISCUSSION

As noted above, Defendant seeks dismissal of five counts of the Amended Complaint: (1) Count II, which alleges reverse racial discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) Count III, which alleges that Defendant created a hostile work environment that discriminated against Plaintiff based on her gender; (3) Count IV, which alleges a hostile work environment based on Plaintiff's race; (4) Count V, which claims ridicule, harassment and psychological harassment; and (5) Count VI, which alleges violations of the Equal Pay Act of 1963.

### A. Count II: Reverse Racial Discrimination

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against "any individual" based on that individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). The dictates of Title VII "are not limited to discrimination against members of any particular race . . . [Title VII] proscribe[s] racial discrimination in private employment against Whites on the same terms as racial discrimination against nonwhites." *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 278-80 (1976).

To establish a prima facie case of reverse discrimination, the plaintiff must "present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1999).[6] However, at the motion to dismiss stage, a Title VII plaintiff does not need to plead a prima facie case of discrimination because the *McDonnell Douglas* standard "is an evidentiary standard, not a pleading standard." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). "Therefore, a plaintiff claiming employment discrimination need only plead facts sufficient to meet the standard of Fed. R. Civ. P. 8(a)." *DiTommaso v. Meds. Co.*, 754 F. Supp. 2d 702, 705 (D.N.J. 2010). "The evidentiary burden at this stage is rather modest: it is to

---

[6] In *Iadimarco*, the Third Circuit confronted the difficulty of applying the traditional approach to Title VII claims — as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) — to cases involving reverse discrimination. Under this analysis, each plaintiff carries the initial burden and must establish a prima facie case of race discrimination by a preponderance of the evidence. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2009). Once the prima facie case is established, "the burden [of production] shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* (quoting *McDonnell*, 411 U.S. at 802). If the employer meets this burden, the presumption of discrimination raised by plaintiff's prima facie case is rebutted, and "[t]he plaintiff must establish by a preponderance of the evidence that the employer's proffered reasons were merely a pretext for discrimination." *Id*.

demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent -- i.e., that discrimination could be a reason for the employer's action." *Marzano v. Computer Science Corp.*, 91 F.3d 497, 508 (3d Cir. 1996). This initial burden is not intended to be onerous. *Id*.

Plaintiff alleges that "PGW ridiculed plaintiff because they preferred to have an African-American in the department" (Am. Compl. ¶ 91) and "PGW/Labor Director was more comfortable working with African-Americans as stated at the Fact Finding Conference October 28, 2008," (*id*. at ¶ 82). Plaintiff also alleges that PGW preferred to hire members "of the darker race," (*id*. at ¶ 79), and that the Director mistreated her to "pave[] the way for a member of his own race" (*id*. at ¶ 86). Plaintiff asserts that she was denied training because of her race, she was harassed because of his race and that she did not get the proper credit for the work that she did because of her race. (*Id*. at ¶ 77-86.) Plaintiff was ultimately terminated. Defendant PGW's one-paragraph response simply says that Plaintiff has not alleged sufficient facts to support this claim. Viewing Plaintiff's pleading liberally and accepting Plaintiff's allegations as true, Plaintiff has pled a factual scenario that is compatible with discriminatory intent. Discrimination could be the reason for Defendants' actions. Plaintiff has satisfied the standard of Rule 8(a). Accordingly, Defendant PGW's Motion to Dismiss Count II will be denied.

### B. Counts III and IV: Hostile Work Environment

A hostile work environment exists for purposes of a Title VII claim when unwelcome racist or sexist conduct unreasonably interferes with a person's performance or creates an "intimidating, hostile or offensive working environment." *Weston v. Pennsylvania*, 251 F.3d 420, 426 (3d Cir. 2001). To establish a prima facie hostile work environment claim, Plaintiff must

prove that: (1) she suffered intentional discrimination because of a protected characteristic; (2) the discrimination was severe or pervasive; (3) she was detrimentally affected by the discrimination; (4) the discrimination would detrimentally affect a reasonable person in her position; and (5) respondeat superior liability exists.  *Cardenas v. Massey*, 269 F.3d 251, 260 (3d Cir. 2001).

For a hostile work environment claim to succeed, "the harassment must be so severe or pervasive that it alters the conditions of employment and creates an abusive environment." *Weston*, 251 F.3d at 426.  Courts consider several factors in assessing whether an environment is hostile: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; whether it unreasonably interferes with an employee's work performance." *Id*.  "Offhand comments[] and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Plaintiff has stated a claim of gender- and race-based hostile work environment.  Plaintiff points to a number of comments and experiences which indicate that she suffered a hostile work environment because of her race or gender.  "Title VII does not set forth a general civility code for the American workplace."  *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).  Nevertheless, if we read pro se Plaintiff's allegations liberally and in a light most favorable to her, we cannot say that she has failed to allege a hostile work environment because of her race or gender.  Based on Plaintiff's pleadings, it is plausible that she could prevail on a claim of "severe or pervasive" discrimination.  Plaintiff has stated a claim for a hostile work environment under Title VII.  Defendant PGW's Motion to Dismiss is denied as to Counts III and IV of the Amended Complaint.

### C. Count V: Harassment

Plaintiff raises a claim for "Ridicule/Harassment/Psychological Harassment." (Am. Compl. ¶¶ 139-77.) Plaintiff claims that her work was consistently belittled by her superiors, who "made several comments about errors" in her writing (*id*. at ¶ 142), complained about the quality of her meeting minutes (*id*. at ¶ 145), and asked her to "reorganize all of the file cabinets and place the documents in binders by headings," later changing the order of her organization (*Id*. at ¶¶ 151-52). According to Plaintiff, these actions constituted "mind games with plaintiff to make her look crazy." (*Id*. at ¶ 155.) Plaintiff also claimed that she was rushed (*id*. at ¶ 159), asked to answer billing-related calls from customers after a number of credit card fraud complaints *(id*. at ¶¶ 161-63), and that her role was generally downplayed at PGW (*id*. at ¶ 171). Finally, Plaintiff alleges that she was given work "at the end of the day on many Fridays." (*Id*. at ¶ 174.)

Plaintiff's allegations do not establish a separate cause of action. Even reading Plaintiff's Amended Complaint liberally, we are aware of no basis for relief because of general ridicule and psychological harassment, and Plaintiff has not pointed to any. The federal laws which protect against employment discrimination do so on the basis of various protected characteristics, such as race, gender, age and disability. As we have noted, these laws do not establish a general code of civility for the workplace. Although Plaintiff's allegations may have some evidentiary value for Plaintiff's other claims, Plaintiff's claims of harassment, ridicule and psychological harassment fail to state a separate cause of action for which relief can be granted. Accordingly, Defendant PGW's Motion will be granted, and Count V of the Amended Complaint will be dismissed.

### D. Count VI: Equal Pay Act

Plaintiff claims that she "was paid substantially lower than members of the opposite sex

11

performing substantially similar type duties." (Am. Compl. ¶ 185.) Plaintiff states that she performed similar work to individuals with the titles of Administrative Coordinator, Attendance Manager and Attendance Investigator. (*Id*. at ¶ 179.) Plaintiff states that these positions are filled by males and are higher-paid. (*Id*. at ¶¶ 186-87.) Plaintiff claims that as a result of the PIP in which she was placed, she was unable to interview for higher-ranking positions and did not receive scheduled salary increases. (*Id*. at ¶¶ 188, 193-94.)

In order to state a claim under the EPA, Plaintiff must establish that employees of the opposite sex are paid more for equal work "on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974). If Plaintiff can establish this, Defendant is then required to rebut this prima facie case by establishing an acceptable affirmative defense. *See Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).

Plaintiff states that the "job responsibilities listed on the requisitions/announcements for" the three positions for which she claims she was unable to interview "are similar to many of the job functions performed by plaintiff as a Secretary." (Am. Compl. ¶ 179.) She cites "inputt[ing] attendance for several hundred people in the absence of Management," "monitor[ing] and track[ing] absences," and "maintain[ing] spreadsheet[s]" as examples of such work. (*Id*. at ¶¶ 180-83.)

Plaintiff points to similarities between a secretarial position and other jobs at PGW. However, Plaintiff has not stated a claim that she was paid less than similarly situated male employees. Plaintiff does not show that her position was "equal" to the higher-paying positions that she cites. Many of the similarities that she notes are common to a wide range of office

positions. Plaintiff has not shown that any of the positions — some of which pay twice as much — involve "equal skill, effort and responsibility," as required to state an EPA claim.

Plaintiff's argument that she was placed on PIP and was denied the opportunity to interview for the higher-paying positions does not amount to an EPA claim; it is best addressed in the context of Plaintiff's Count I claim that she was discriminated against because of her gender. Plaintiff cannot state a claim that she was paid less than employees of the opposite sex who were employed in the same or fundamentally equal positions. Accordingly, Plaintiff's EPA claim will be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendant Philadelphia Gas Works' Partial Motion to Dismiss is granted in part and denied in part. The Motion is granted as to Counts V and VI.. The Motion is denied as to Counts II, III and IV.

An appropriate Order follows.[7]

BY THE COURT:

_____
R. BARCLAY SURRICK, J.

---

[7] We are obligated to grant pro se litigants leave to amend unless doing so would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004). Since Plaintiff has already submitted an Amended Complaint, we do not believe either party would benefit from granting Plaintiff leave to submit a Second Amended Complaint, which would likely prompt a third motion to dismiss from Defendants. If new evidence arises which justifies a second amended complaint, we will consider a motion to amend the pleadings under Federal Rule of Civil Procedure 15 at the appropriate time.